UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AGNES SCOTT
          Plaintiff,

   v.                                      Case No. 12-C-0871

DELBERT SERVICES CORPORATION and
CESAR GUZMAN
          Defendants.

---

### DECISION AND ORDER

Agnes Scott has filed a complaint against a debt-collection firm, Delbert Services Corporation ("Delbert"), and its president, Cesar Guzman. She alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA") when, between March and May of 2012, they made more than fifty automated telephone calls to her mobile phone in an attempt to collect a debt.

The defendants have moved to dismiss the complaint for improper venue, see Fed. R. Civ. P. 12(b)(3), on the basis of an arbitration clause. In deciding this motion, I may consider matters outside the pleadings. See Faulkenberg v. CB Tax Franchise Sys., LP, 637 F.3d 801, 809–10 (7th Cir. 2011). However, unless I hold an evidentiary hearing, I must construe all facts and draw all reasonable inferences in favor of the plaintiff. See id. at 806; Szabo v. Bridgeport Machs., Inc., 246 F.3d 672, 676–77 (7th Cir. 2001). Neither party has requested an evidentiary hearing, and so I construe all facts and draw all reasonable inferences in favor of the plaintiff.

The arbitration clause appears in a "consumer loan agreement," under which the plaintiff borrowed $850 from an entity named Western Sky Financial, LLC ("Western Sky").

The agreement provides that it is governed by the laws of the Cheyenne River Sioux Tribe, and the arbitration clause states in relevant part as follows:

> **Agreement to Arbitrate.** You agree that any Dispute . . . will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.
>
> **Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

(Decl. of Martin A. Webb, Ex. A., at page 5 of 7.)

The plaintiff, in opposing the defendants' motion to dismiss, does not dispute that she would have been compelled to arbitrate if she had filed claims against Western Sky. However, she contends that Delbert and Guzman lack standing to enforce the arbitration clause in her agreement with Western Sky because they are not signatories to that agreement.[1] Delbert

---

[1] The plaintiff also argues that the agreement has not been properly authenticated, but Western Sky's records custodian has identified the agreement, and so any authentication requirement has been satisfied. See Fed. R. Evid. 901(b)(1). In addition, she argues that the defendants have not shown that she signed the agreement. However, the agreement indicates that the plaintiff signed it electronically, and the plaintiff does not dispute that she did sign the agreement electronically and does not point to any applicable law that would render the agreement invalid due to the fact that it was signed electronically.

2

and Guzman contend that they have standing to enforce the arbitration clause in the agreement because Delbert has been "assigned" the "servicing rights" under the agreement. (Decl. of Cesar Guzman ¶ 6.)

As an initial matter, I am not sure what the defendants mean when they say that Delbert has been "assigned" the "servicing rights" under the agreement. Do they mean that Delbert entered into some formal agreement in which it purchased the servicing rights as an asset? Or do they mean that Delbert has been hired as an employee or independent contractor to collect the plaintiff's debt? But I need not resolve this question because the defendants have not produced evidence from which I could reasonably conclude that they have any rights under the agreement.

The defendants' evidence establishes that plaintiff entered into the consumer loan agreement with Western Sky, and that Western Sky assigned its rights under that agreement to someone. However, immediately we run into a problem when we try to identify the entity to whom Western Sky made the assignment. Western Sky's owner states that Western Sky assigned the "loan in its entirety" to an entity known as CashCall, Inc. (Webb Decl. ¶ 10.) However, Sean Bennett, who describes himself as the "business analyst manager" of CashCall, Inc., offers conflicting testimony. He states that Western Sky assigned its rights under the agreement to an entity known as WS Funding, LLC, rather than to CashCall. (Decl. of Sean Bennett ¶ 2.) According to Bennett, WS Funding then assigned the "Note service" (whatever that is) to CashCall. (Id.) Bennett then tells us that WS Funding sold its rights under the agreement to an entity known as Cuzco Capital Investment Management, LLC. (Id. ¶ 3.) However, Bennett does not explain how he came to know that WS Funding assigned its rights to Cuzco—was he told that by someone at WS Funding, did he see a document

3

Case 2:12-cv-00871-LA   Filed 03/21/13   Page 3 of 4   Document 16

memorializing the assignment, or what? Thus, this testimony by Bennett is inadmissible. See Fed. R. Evid. 602. Defendant Guzman, who is the president of Delbert, also states that Cuzco purchased the agreement, although he does not say from whom. (Guzman Decl. ¶ 5.) But like Bennett, Guzman does not explain how he came to know that Cuzco purchased any rights under the agreement. So again, this testimony is inadmissible. The defendants have offered no other evidence purporting to establish that Cuzco obtained any rights under the consumer loan agreement.

The defendants believe that they may enforce the arbitration clause in the agreement because Cuzco has assigned its "servicing rights" to Delbert. (Id. ¶¶ 5–6.) However, as we have just seen, the defendants have not submitted admissible evidence showing that Cuzco had any rights under the agreement that it could have assigned to Delbert. Thus, the evidence in the record does not allow me to conclude that the defendants have standing to enforce the arbitration clause. Their motion to dismiss for improper venue will be denied.

The defendants also move, in the alternative, for a stay pending arbitration. However, like the motion to dismiss, the motion to stay depends on the defendants' showing that they have standing to enforce the arbitration clause. Because the defendants have failed to show that they have standing to do so, their request for a stay will also be denied.

Accordingly, **IT IS ORDERED** that the defendants' motion to dismiss for improper venue, and their alternative motion for a stay pending arbitration, are **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of March 2013.

            s/ Lynn Adelman
            _____
            LYNN ADELMAN
            District Judge